# United States District Court

Southern **DISTRICT OF** California

FILED
2008 AUG -1 PM 12:19
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

| In the Matter of the Search of<br>(Name, address or brief description of person or property to be searched)<br>Priority Mail Parcel #0307-1790-0005-3022-3026 addressed to Myron Klien 1433 Lincoln St Newbern, NC 28560. The parcel has the return address information of Adam Klien 3453 Condon Pl. San Diego, CA 92122. | **APPLICATION AND AFFIDAVIT**<br><br>**FOR SEARCH WARRANT**<br><br>CASE NUMBER: '08 MJ 2387 |
|---|---|

I, **Kelly E. Cain** being duly sworn depose and say:

I am a(n) **U. S. Postal Inspector** and have reason to believe
  *Official Title*

that on the premises known as (name, description and/or location)

Priority Mail Parcel #0307-1790-0005-3022-3026 addressed to Myron Klien 1433 Lincoln St Newbern, NC 28560. The parcel has the return address information of Adam Klien 3453 Condon Pl. San Diego, CA 92122 which is in the custody of the U. S. Postal Inspection Service

in the Southern District of California
there is now concealed property, namely (describe the person or property)
Controlled substances, materials, and documents reflecting the distribution of controlled substances through the United States Mail, including money paid for controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence and contraband

in violation of Title 21  United States Code, Section(s) 841(a)(1), 843(b) and 846.
The facts to support the issuance of a Search Warrant are as follows:
See attached.

Continued on the attached sheet and made a part hereof.    X Yes    ___ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

_____8/1/08_____                  at    San Diego, CA
Date                                          City and State

**JAN M. ADLER**                            _____
U.S. Magistrate Judge                       Signature of Judicial Officer
Name and Title of Judicial Officer

AFFIDAVIT FOR SEARCH WARRANT

I, Kelly E. Cain, being duly sworn hereby depose and state:

1. I am a United States Postal Inspector currently assigned to the San Diego Field Office of the Postal Inspection and my duties include investigating violations of the Drug Abuse Prevention and Control Act.

2. This affidavit is submitted in support of an application for a search warrant for the following Priority Mail Parcel:

    a) Priority Mail Parcel #0307-1790-0005-3022-3026 addressed to "Myron Klien 1433 Lincoln St Newbern, NC 28560". The parcel has the return address information of "Adam Klien 3453 Condon Pl. San Diego, CA 92122".

3. I have been employed as a Postal Inspector since August 2006. From August 2006 through October 2006, I attended the Basic Postal Inspector Academy. Starting October 2006, I was assigned to the Prohibited Mailings Illegal Narcotics Team. Previous to that, I was employed with the San Diego County Sheriff's Department for approximately three and one-half years and with the San Diego State University Police Department for approximately six years. During that time, I was involved in several narcotics related investigations. I received training from the California Department of Justice Advanced Training Center on Drug Identification & Influence, the California Narcotic Officers Association on Drug Abuse Recognition, the Drug Enforcement Administration on Basic Narcotic Investigations and the U.S. Postal Inspection Service which included instruction regarding individuals using the U.S. Mails to transport controlled substances and

proceeds from the sale of controlled substances as well as the use of Postal Money Orders to launder the proceeds of controlled substances transactions.

4. Based upon my training, experience and discussions with other Postal Inspectors and agents I know the following in summary:

    a. Individuals who regularly handle controlled substances leave the scent of controlled substances on the currency and other items they handle. Proceeds from these sales are often stored in close proximity to the controlled substances, thereby transferring the odor of the controlled substance to the monies and packaging materials. Narcotic canines are trained to alert on the scents of controlled substances.

    b. The Postal Inspection Service and DEA Narcotic Task Force Commercial Interdiction Team have worked aggressively to limit the use of shipping companies and the U.S. Mail for the transportation of controlled substance through these companies.

    c. Ongoing investigations have disclosed that Priority/overnight and "two day" parcel deliveries have become a method of choice by drug dealers for the transportation of contraband or the proceeds of narcotic sales.

    d. I know that Southern California is a source region for controlled substances being mailed throughout the United States. The proceeds from these narcotic transactions are then transported via the U.S. Mails and other communication facilities back to Southern California, the source of the controlled substances.



    e.    Drug dealers prefer the U.S. Mail, (but will sometimes utilize commercial shipping companies), specifically "Express Mail" or "Priority Mail," for the narcotic or narcotic proceeds transportation for various reasons, some of which are listed below:

1. Items sent via "Express Mail" or "Priority Mail" are considered to be first-class mail, therefore, cannot be examined without a Federal Search Warrant.

2. "Express Mail" is usually requested to be delivered by the next day's mail.

3. "Priority Mail" is usually requested to be delivered within two days of mailing.

4. Dispatch times for "Express Mail" are specific and are controllable by the mailer/shipper.

5. Any delay to the mail is an indication to the mailer the mail items have been possibly compromised by law enforcement agencies to obtain a search warrant.

6. While it is not always the case that a delay of "Express Mail" or "Priority Mail" is for law enforcement purposes, those involved in illegal transactions have found that the odds are against delays in deliveries of "Express Mail" or "Priority Mail" by United States Postal Service.

7. "Express Mail" and Priority Mail" may weigh up to 70 pounds and is desired for large volume shipments.

f. Businesses are more likely to use Express Mail and Priority Mail than First-class Mail in the course of normal business and will often use an Express Mail Corporate Account Number for the billing of the mailed articles.

g. Criminals who are involved in trafficking of controlled substances and drug proceeds will often receive multiple Express Mail articles within a short time period of each other.

h. Criminals who are involved in trafficking of controlled substances and drug proceeds will often use multiple Post Office Boxes, Commercial Receiving Agencies and addresses in foreign countries to conceal their true identities and place of residence.

i. I also know that drug related parcels containing currency, checks or money orders sometimes do not contain the presence of controlled substances because persons involved in shipping often utilize packing methods and sanitation procedures to conceal the odor of controlled substances.

j. I also know from talking to U.S. Postal Service Supervisors and employees responsible for handling the mail that Express Mail is insured for up to $100 in case of loss or damage. Insurance for Priority Mail may be purchased at an additional fee. Customers are discouraged from sending U.S. currency via the U.S. Mails and are encouraged to purchase negotiable instruments as a means to send currency by the U.S. Postal Service.

5.   The information in this affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience as well as information related to me by other Postal Inspectors and law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

6.   On 07-30-08, I was conducting a routine interdiction at the Midway Processing & Distribution Facility in San Diego, CA. I came in contact with Priority Mail Parcel #0307-1790-0005-3022-3026 addressed to "Myron Klien 1433 Lincoln St Newbern, NC 28560". The parcel has the return address information of "Adam Klien 3453 Condon Pl. San Diego, CA 92122". I became suspicious of the subject parcel for the following reasons: The size, shape and appearance of the parcel was consistent with parcels previously identified in other investigations that contained controlled substances. I took custody of the subject parcel for further investigation. I searched an address database system for the return address of "3453 Condon Pl. San Diego, CA 92122". The address appeared to be a non-existent address. I contacted the Post Office who handles deliveries for the 92122 zip code and confirmed with an employee that the return address was non-existent. I searched an address database system for the recipient address of "1433 Lincoln St Newbern, NC 28560". The address appeared to be a valid address; however, the name "Adam Klien" was not associated with that address.

7.   On 07-31-08, I met with San Diego Police Department Detective Steve Sloan and his trained narcotic detection canine Riley, at the Midway Processing & Distribution Facility in San Diego, CA. Detective Sloan and Riley conducted an exterior examination of the subject Priority Mail Parcel #0307-1790-0005-3022-3026. When Riley examined the parcel described above, Detective Sloan told me that Riley did not alert to the presence

5

of the odor of controlled substances. The qualifications of canine Riley are contained in Attachment A.

8. On 07-31-08, I met with San Diego Harbor Police Department Officer K. Morris and his trained narcotic detection canine Luke, at the San Diego Harbor Police Department. Officer Morris and Luke conducted an exterior examination of the subject Priority Mail Parcel #0307-1790-0005-3022-3026. When Luke examined the parcel described above, Officer Morris told me that Luke had alerted to the presence of the odor of controlled substances. The qualifications of canine Luke are contained in Attachment B.

9. Based on the facts set forth in this affidavit, I submit that there is probable cause to believe controlled substances, notes and/or currency from the illegal sale and mailing of controlled substances is being concealed in the Express Mail parcel as described above and seek the issuance of a search warrant directing the search of the article as described above and the seizure of the article, any controlled substances, currency, and/or materials and documents reflecting the distribution of controlled substances, all in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

Kelly E. Cain
Postal Inspector

Sworn to before me, and subscribed in my presence, on this
___1st___ Day of ___August___, 2008.

U. S. Magistrate Judge

6



## ATTACHMENT A
### For
### Steve A. Sloan and K-9 Reilly

Steve A. Sloan is currently a detective for the San Diego Police Department (SDPD) assigned to the San Diego Integrated Narcotic Task Force (NTF) and deputized as a Federal Officer. Sloan has been a police officer for over 26 years and has worked as a narcotic detection dog handler since 1985. From 1988 to April 1993, Detective Sloan was the narcotic detection dog trainer for the SDPD and subsequently trained and certified 30 narcotic detection dog teams. Detective Sloan is currently the narcotic detection canine trainer for the canines assigned to the San Diego Drug Enforcement Administration Narcotic Task Force. Sloan is a certifying official for the California Narcotic Canine Association. .

Detective Sloan has participated in over 300 arrest of persons for violations of controlled substance laws. Sloan has in excess of 300 hours of formal training and extensive experience in controlled substances investigations, particularly involving marijuana, methamphetamine, heroin, and cocaine, including the 80 hour DEA narcotic investigator course. Sloan has testified as an expert in the field of narcotic detection dogs in both state and federal court. Detective Sloan is an instructor in the field of narcotic detection dogs and/or parcel interdiction for the International Narcotic Interdiction Association, California Department of Justice, California Narcotic Officers Association, and the California Narcotic Canine Association. Sloan is familiar with the manner in which said substances are packaged, marketed and consumed. Detective Sloan has received formal training and field experience in the identification of all types of controlled substances, particularly those mentioned above, by sight and odor.

From April 1993 to May 1996, Sloan was assigned to the San Diego International Airport/Harbor Narcotic Task Force. Sloan was involved in over 200 cases at that assignment, either as the case agent, canine handler, or assisting detective. Detective Sloan has observed thousands of persons in and around the airport and has developed an expertise in observing certain characteristics, of which one or more are commonly evident in the majority of narcotic smuggling cases.

On May 8, 1996, Detective Sloan was assigned to the NTF Commercial Interdiction Team. Sloan has been involved in over 300 parcel cases where he utilized surveillance techniques, profiles of persons and parcels and his narcotic detection canine. Sloan has observed several thousand parcels during the course of his duties. On selected parcels, Sloan has observed certain characteristics that although not illegal, when taken in their totality lead him to believe the parcel contains controlled substances. These include illegible or non-existent return addresses, misspelled street names, handwritten labels, taped in an unusual manner, strong masking odors emitting from the parcel and/or cash payment. His expertise in identifying these characteristics has been the sole probable cause for the issuance and execution of search warrants for parcels containing controlled substances.

Until recently, Sloan has been able to confirm his suspicions by utilizing a narcotic detection canine to alert and obtaining a search warrant. It has come to Sloan's attention during recent inspections of parcels containing controlled substances discovered during routine audits by United Parcel Service security that the smugglers are utilizing extreme measures to shield the odor of the controlled substance from the

canine. In October 2004, Detective Sloan was re-assigned to the San Diego International Airport team.

In June 2005, Detective Sloan was assigned to train K9 "Reilly in the area of narcotic detection. Reilly had received approximately 40 hours of training in the detection of marijuana, cocaine, heroin and methamphetamine prior to this under the direction of Maryanne Bohnett of Far Fetched Retrievers kennels. Ms. Bohnett is a trainer and certifying official for the California Narcotic Canine Association. On August 16, 2005 after 40 hours of training in the detection of marijuana, heroin, methamphetamine and cocaine, "Reilly" was certified as 100% proficient in the detection of same by CNCA certifying official Tom Iverson. On July 13, 2006, Reilly was recertified by CNCA certifying official, Tom Iverson. Reilly's alert consists of physical and mental reactions, which include a heightened emotional state, and coming to a complete "sit" when his physical position allows. Reilly has completed a total of 226 hours of training. Subsequent to his certification, Reilly has alerted 13 times and 1 search warrant has been obtained on his alerts. Reilly alerts on many occasions where the controlled substances are seized because a warrant is not required, has already been obtained or consent is obtained. Reilly is the fifth narcotic detection dog Detective Sloan has worked since 1985.

Detective Sloan and Reilly have been involved in training exercises where known controlled substances, containers, or paraphernalia were hidden. Because of the absorption of the odor, and the narcotics detection dog's inherently keen sense of smell, the narcotic detection dog will continue to alert on the container or item depending on the length of exposure to the controlled substance, the specific controlled substance,

and ventilation of the item or container. The common belief is all currency in circulation is contaminated with narcotics. It has been the experience of Detective Sloan, a court recognized narcotic detection canine expert, a properly trained narcotic detection canine will not alert to all currency. Sloan has witnessed numerous searches of parcels by trained narcotic detection canines where no alert was given. The parcels later were discovered to contain substantial sums of U.S. Currency.

It has been Detective Sloan's experience; the training of the canine regarding threshold amounts of narcotic odors is the most relevant factor regarding alerts on currency. It has been Sloan's experience the training must include the establishment of a lower threshold of approximately one gram of odor or more to ensure the canine is alerting to more than average contamination. Average contamination is reported to occur through normal handling. The canine must also be "proofed" from numerous odors including currency on a regular basis to maintain consistency. These have included food, plastic bags and wrap, tape, controlled substance adulterants, circulated US Currency, and other items. Proofing is a method used in training to ensure the canine alerts only to the odors for which it is trained to alert.

## ATTACHMENT A̶ B
### For
### Officer K. Morris and K-9 Luke

Officer Morris is currently a narcotic detection canine handler for the San Diego Harbor Police Department (SDHPD) assigned to the Patrol Division. Morris has been a Police Officer for over 5 years and has worked as a narcotic detection canine handler since December 2005.

Officer Morris has participated in over 80 arrests of persons for violations of controlled substance laws. Morris has in excess of 50 hours of formal training and experience in controlled substances investigations, particularly involving marijuana, methamphetamine, heroin, and cocaine, including the 24 hour California Narcotic Officer's Association Drug Abuse Recognition course. Morris is a member of the California Narcotic Officers Association, and the California Narcotic Canine Association. Morris is familiar with the manner in which said substances are packaged, marketed and consumed. Officer Morris has received formal training and field experience in the identification of controlled substances, particularly those mentioned above.

In November 2005, Officer Morris was assigned to handle K9 "Luke" for the purpose of narcotic detection. Officer Morris and "Luke" attended a 240-hour course of training at Adlerhorst International Kennels in the detection of marijuana, cocaine, heroin and methamphetamine. On December 23, 2005, after a 240-hour training course in the detection of marijuana, heroin, methamphetamine and cocaine, Adlerhorst Certifying Official Steve Sanders certified "Luke" as 100% proficient. On December 1st 2006, California Narcotic Canine Association (CNCA) certifying official Steve Sloan certified "Luke" as 100% proficent.

1

"Luke's" alert consists of physical and mental reactions, which include a heightened emotional state, and coming to a complete "sit" when his physical position allows. "Luke" has completed over _325_ hours of training. Subsequent to his first certification, "Luke" has alerted over _140_ times.

Officer Morris and "Luke" have been involved in training exercises where known controlled substances, containers, or paraphernalia were hidden. Because of the absorption of the odor, and the narcotics detection dog's inherently keen sense of smell, the narcotic detection dog will continue to alert on the container or item depending on the length of exposure to the controlled substance, the specific controlled substance, and ventilation of the item or container. The common belief is all currency in circulation is contaminated with narcotics. It has been the experience of Officer Morris that a properly trained narcotic detection canine will not alert to all currency.

It has been Officer Morris's experience that the training of the canine regarding "proofing" of non-narcotic odors is the most relevant factor regarding alerts on currency. Proofing is a method used in training to ensure the canine alerts only to the odors for which it is trained to alert to. The canine must be "proofed" from numerous odors including currency on a regular basis to maintain consistency. Proofing items have included food, plastic bags and wrap, tape, circulated US Currency, non-circulated US Currency, and other items. "Average contamination" of currency is reported to occur through normal handling. "Luke" has shown during training that he does not alert on circulated currency with "average contamination."

###